### THE STATE vs. GEORGE SOUTH.

1. To constitute the crime of larceny, it must appear that the goods were taken with the intention of permanently depriving the owner of his property.

2. If the property is taken with the intention of only using it temporarily, and then returning it to the owner, it is not larceny.

3. Whether the taker intended to wholly deprive the owner of his property, or whether he intended to only use it temporarily, and then return it, is a question of fact to be decided by the jury from the evidence.

---

This cause was certified from the Mercer Oyer and Terminer for the advisory opinion of this court.

Argued before the CHIEF JUSTICE and Justices VREDENBURGH and WHELPLEY.

*Grandin*, for the state.

*Kingman*, for defendant.

The opinion of the court was delivered by the

CHIEF JUSTICE. From the case stated, it must be assumed that the jury were instructed, that although they should believe that the defendant, at the time he took the property, intended to return it, and did return it in pursuance of such intention, he was nevertheless guilty of larceny. The question of intention was not left to the jury. This instruction, it is understood, was designedly given for the purpose of presenting for the consideration of this court the question, whether the fraudulently depriving the owner of the temporary use of a chattel can

constitute larceny at the common law; whether the felonious intent or *animus furandi* may consist with an intention to return the chattel to the owner.

Larceny is defined to be "the wrongful or fraudulent taking and carrying away, by any person, of the mere personal goods of another from any place with a felonious intent to convert them to his, the taker's own use, and make them his property without the consent of the owner." This definition is cited and approved in 3 *Chitty's Cr. L.* 679; 2 *East's P. C. ch.* 16, § 2; *Roscoe's Cr. Ev.* 467; 2 *Russell on Crimes,* (4th ed.) 93; 3 *Greenl. Ev.* § 150.

Archbold defines larceny thus: "when a man knowingly takes and carries away the goods of another without any claim or pretence of right, with intent *wholly* to deprive the owner of them, and to appropriate or convert them to his own use. *Archb. Cr. Law* 119.

In the case of *The Queen* v. *Holloway, Car. & Kirwan* 946, Parke, B., said, "The definitions of larceny are none of them complete. Mr. East's is the most so. But this is defective in not stating what the meaning of 'felonious,' in the definition, is. It may be explained to mean that there is no color of right or excuse for the act, and the 'intent' must be to deprive the owner, not *temporarily* but *permanently*, of his property." In the case last cited, it was decided that an intention to deprive the owner *wholly* of his property was an essential element of larceny. All the cases, says Parke, B., show that if the intention were not to take the entire dominion over the property there is no larceny. And Coltman, J., states, as the result of all the cases, that a taking, though wrongful, for a mere temporary purpose does not amount to larceny. See the case as reported in 1 *Denison's C. C.* 370, The same doctrine is sanctioned in *Rex* v. *Phillips et al.,* 2 *East's P. C. ch.* 16, § 98; *Rex* v. *Webb,* 1 *Moody's C. C.* 431; *Rex.* v. *Crump,* 1 *Car. & P.* 658; *McDaniel* v. *The State,* 1 *Sme. & Mar* 401; *Witt* v. *The State,* 9 *Missouri* 671.

The taking and carrying away are felonious, according

c*

to the definition of the criminal law commissioners, where the goods are taken against the will of the owner, and where the taker intends fraudulently to deprive the owner of his *entire interest in the property* against his will. Cited in *Roscoe's Cr. Ev.* 409.

A very clear and satisfactory statement of the law upon this point will be found in a well considered note by Judge Sharswood, to the case of *The Queen* v. *Holloway*, 1 *Denison's C. C.* 176. He states the law thus : " It seems to be settled law that every wrongful taking, without any color of right, with intent to deprive the owner *wholly of his property* is larceny, whatever other motive may also have influenced the taker : and *that no wrongful taking will amount to larceny which is not done with such intent.* The question for the jury in *each* case will be whether the facts prove such intent.

If it appear that the prisoner kept the goods as his own till his apprehension, or that he gave them away, or sold or exchanged or destroyed them, such intent may, generally speaking, be deemed proved. . . . . . If, on the other hand, the prisoner took the goods with a view only to a *temporary user*, intending to keep them for a short time only, and to return them to the owner unimpaired, an intent thereby wholly to deprive the owner cannot, generally speaking, be deemed proved. . . . . . But if he took them with a view only to a temporary user, intending, however, to keep them for a very unreasonable time, or to use them in a reckless, wanton, or injurious manner, and then to leave it to mere chance whether the owner ever recovered them or no, and if he recovered them at all, would probably recover them in a damaged or altered condition, such a taking would seem, in common sense, to be ample evidence of an intent wholly to deprive the owner of his property."

The fact of the taking being merely for temporary use seems, therefore, not of itself to be inconsistent with an intent wholly to deprive the owner of his property, and therefore does not seem necessarily to negative the felony,

but simply to be a piece of evidence which the jury may regard as showing a taking from wantonness, mistake, accident, frolic, or thievish design, according to circumstances.

The definition of larceny cited from the text books and all the adjudicated cases cited are comparatively modern. The early authorities furnish but little light on the subject Neither Hale nor Hawkins define the crime of larceny. Coke's definition, that "larceny, by the common law, is the felonious or fraudulent taking and carrying away, by any man or woman, of the mere personal goods of another, neither from the person nor by night, from the house of the owner (3 *Ins.* 107, *cap.* 47,) leaves the question what constitutes the felonious taking entirely open. 1 *Hale's P. C.* 504. The cases mentioned by Hale (1 *P. C.* 509) and by *Blackstone* (4 *Com.* 232) of the temrary use and return of chattels, seem rather illustrations of the means by which the felonious intent may be disproved than any statement of the principle, that a temporary appropriation of property may not be felonious.

In the case of *The Queen* v. *Holloway,* Lowndes, counsel, stated in argument, that it had never been expressly decided that an intent to deprive the owner *permanently* of his property was necessary to constitute larceny. Independent of the authorities, it seems difficult to assign a satisfactory reason why the fraudulent taking of property from the owner, and an intention on the part of the taker to use the thing taken as his own, and so wrongfully to assert an entire dominion over the thing for a time, should not constitute larceny, or why such act does not manifest a felonious intent on the part of the taker as clearly as when he intends to deprive the owner of his property for ever. But the law is well settled otherwise. It has been uniformly understood and acted upon in this state. The instruction to the jury was erroneous. The question of intent should have been submitted to the jury under instruction from the court. The Oyer should be advised that the verdict should be set aside, and a new trial granted.

CITED *in State v. Davis.* 9 *Vr.* 177.