### STATE v. FRANKLIN DAVIS.

Fraudulently taking the personal property of another, without his consent, and with no intent at the time of taking to return the same, is evidence of an intent to deprive the owner wholly of his property; and the verdict of a jury finding the taker guilty of larceny, will not be set aside.

The Court of General Quarter Sessions of the Peace of the county of Mercer, request the advisory opinion of the Supreme Court in the above cause. They find certain facts upon an allegation of crime tried before them, by the prisoner's consent, under the statute, without a jury, and adjudge the defendant guilty. Upon motion for a new trial, a rule to show cause was granted and the finding sent to this court. The material facts appear in the opinion.

Argued at June Term, 1875, before Justices SCUDDER, KNAPP and DIXON.

For the State, *M. Beasley, Jr.*

For the defendant, *W. Y. Johnson.*

The opinion of the court was delivered by

SCUDDER, J. The defendant, who is quite young, in passing along the street near midnight, February 22d, 1875, saw the carriage of Dr. Charles Hodge, Junior, standing in front of his residence. He and a companion took the horse and carriage, drove rapidly away in a reckless manner, and about 10 o'clock the next day the horse and carriage were found abandoned several miles away from where they were taken. They were found in the road, the horse much exhausted from driving and want of food. The prisoner did not return the horse and wagon to the owner, or make any effort to do so, or apprise any one where they could be found, or to whom or where they belonged. He did not even put them in some secure place, where the owner might find them. These acts were perfectly consistent with an intent originally to deprive the owner of his property; but finding them a dangerous possession, and becoming frightened, they were abandoned when detection became imminent. His conduct was utterly reckless of the rights of the owner; but was it criminal, and does it sustain the finding that he was guilty of larceny?

The principles which must determine this case are fully discussed by Chief Justice Green in *State* v. *South*, 4 *Dutcher* 28, and, as is his wont, he leaves but little to find on the subject for those who come after him as gleaners.

The question in that case was, whether the fraudulently depriving the owner of the temporary use of a chattel can constitute larceny at the common law; whether the felonious intent, or *animus furandi*, may consist with an intention to return the chattel to the owner. It was there held, that if the property were taken with the intention of only using it temporarily and then returning it to the owner, it is not larceny; but if it appear that the goods were taken with the intention of permanently depriving the owner of his property, then it is larceny; and that this intent is a fact to be decided by the jury from the evidence.

The question, therefore, in this case is, whether there are facts shown from which a jury should infer that it was the intention of the defendant to permanently deprive the owner of his property.

A man's intention must be judged by his acts and expressions; and it is manifested by circumstances that vary with almost every case that is presented for consideration. The general rule to determine what he intends by his acts is, that a man intends that consequence which he contemplates, and which he expects to result from his act, and he therefore must be taken to intend every consequence which is the natural and immediate result of any act which he voluntarily does. 2 *Stark. Ev.* 573.

When, by the voluntary act of this defendant, the horse and carriage were loosed from their hitching place in front of their owner's door, and driven away in the night, and after many miles and hours of reckless driving were left in the public road, did the taker contemplate, and was the natural and immediate consequence which he should be presumed to contemplate at the time of taking that the owner would be permanently deprived of his property? It is not his intention at the time of the abandonment, but the purpose at the time of taking, that we must seek; for an article may be taken with intent to steal and afterwards abandoned on pursuit, or from a mere change of purpose, yet the taking will be larceny.

I think that fraudulently taking the personal property of another without his consent, and with no intent, at the time of taking, to return the same, is evidence of such intent to deprive the owner of his property; that a jury not only could, but should find the taker guilty of larceny.

It is not a mere *temporary taking* which may consist with an intent to return, but a taking what may result by a natural and immediate consequence in the entire loss and deprivation of the property to the owner. An abandonment to mere chance is such reckless exposure to loss that the guilty

party should be held criminally responsible for an intent to lose.

If a person take another's watch from his table, with no intent to return it, but for the purpose of timing his walk to the station to catch a train, and when he reaches there leaves it on the seat, for the owner to get it back or lose it, as may happen. If a man take another's axe with no intent to return it, but to take it to the woods to cut trees, and after he has finished his work cast it in the bushes, at the owner's risk of losing it, such reckless conduct would be accounted criminal. It is true that the probability of finding the horse and wagon may be greater than that of recovering the watch or axe, because they are larger and more difficult to conceal, but the intent is not to be measured by such nice probabilities; rather by the broader probability that the owner may lose his property, because the taker has no purpose of ever returning it to him.

The cases that are most frequently cited in opposition to this view, are *Phillips & Strong's* case, 2 *East P. C.*, ch. 16, 98. Here the horses were taken to and in a journey and left at an inn. The jury found the prisoners guilty, but added they were of opinion that the persons meant merely to ride them to Leedsdale and leave them there, and that they had no intention to return them, or to make any further use of them. The court said that if the jury had found the prisoners guilty generally upon the evidence, the verdict could not have been questioned, but as they found specially from the facts that there was no intention in the prisoners to change the property, or make it their own, but only to use it for a special purpose to save their labor in travelling, it was only a trespass and not felony. The express intention found was inconsistent with the general finding. Yet the facts were sufficient to sustain a general verdict of guilty of larceny. The court were divided on the effect of this special finding.

In *Rex* v. *Crump*, 1 *Car. & P.* 658, (11 *E. C. L.*,) the prisoner took a horse with other property, and after going some distance turned the horse loose, proceeded on foot and

attempted to dispose of the other property. It was left to the jury to say whether he intended to steal the horse or to use him to carry off the plunder. He was found not guilty of stealing the horse and guilty of stealing the other property. It was said that he distinctly manifested his purpose of converting the other articles to his own use by offering them for sale. It is odd that such a nice distinction and division of intention should be made dependent on the kind of property taken at the same time. Lord Denman said, in *Regina* v. *Holloway*, that if a man took another's horse without leave, intending to ride it at every fair in England, (which would take him a year,) and then return the horse at the end of that time, it would not be larceny. This was the statement of an extreme case by way of illustrating a principle, and there was here a purpose to return to the owner.

In *Rex* v. *Cabbage R. & R. C. C.* 292, the prisoner went to a stable door, forced it open, took the horse out, went some distance along the road until he came to a coal pit, and there backed the horse in the pit, where he was found dead. It was held that it was not essential to constitute the offence of larceny that the taking should be *lucri causa*, that taking fraudulently, with an intent wholly to deprive the owner of the property, was sufficient, and the prisoner was convicted.

These cases will be sufficient to illustrate the principles and the distinctions upon which this case will be decided.

It is conceded that the law is settled with us according to the rule of the common law, and the approved definition of larceny, given by Mr. East, in *East's P. C.*, ch. 16, § 1, where it is said to be " the wrongful or fraudulent taking and carrying away, by any person, of the mere personal goods of another from any place, with a felonious intent to convert them to his (the taker's) own use, and make them his own property, without the consent of the owner." And it has been uniformly held that the felonious intent must manifest a purpose to deprive the owner wholly of his property.

The definition given by Eyre, B., Pear's case, *East's P. C.*, ch. 16, § 12, that larceny is the wrongful taking of goods

State v. Davis.

with intent to spoil the owner of them *causa lucri*, would seem to be too narrow, because the law considers not only and always the effect of gain to the taker as an essential to the crime, but also the deprivation to the owner of his property. Either will be sufficient in the evidence of larceny.   2 *Arch. Cr. Pr. & Pl.* 389–392.

It is interesting, however, to notice the broader definition of theft or larceny in the civil law, and how nearly it accords with the efforts to reach, by criminal punishment, the reckless temporary use and abuse of the property of others by taking from an owner who does not consent.

*Just. Ins. Lib.* 4, *tit.* 1, thus defines it : " *Furtum est contrectatio fraudulosa, lucri faciendi gratiâ, vel ipsius rei, vel etiam usus ejus, possessionisve; quod lege naturali prohibitum est admittere.*"   Thus not only the fraudulent taking of the thing itself, but the using and possessing anything by fraud for the sake of gain, was theft by the civil law.   But this does not agree with the law as settled in our common law courts, and the taker must intend to deprive the owner wholly of his property.

This is the conclusion to which Chief Justice Green came, as it appears reluctantly, in the case of *The State* v. *South*, and against which Judge Sharswood protests in the note to *Queen* v. *Halloway*, 1 *Den. C. C.* 376, reasoning strongly for an extension of the definition of larceny.

Doubtless the severe punishment of felony under the old English law has led to this more restricted construction, but the lighter penalties which now are inflicted would seem to make an extension of the crime of theft or larceny desirable, even to the limits of the civil law definition.

There has been no case decided in this state, that has held that where the taker had no intention to return the goods, that the taking was merely temporary.   Nor is there anything that should control the action of a jury, or the court acting as such under the statute, when they find that the party having no such intent is guilty of larceny.   It would be a most dangerous doctrine to hold that a mere stranger may thus use

and abuse the property of another, and leave him the bare chance of recovering it by careful pursuit and search, without any criminal responsibility in the taker.

The Court of Quarter Sessions are advised that the verdict is right, and should not be disturbed.