STATE v. SYLVESTER SMITH.

(Filed 28 September, 1966.)

**1. Assault and Battery § 12;    Robbery § 4—**

The evidence in this case held amply sufficient to be submitted to the jury upon the question of defendant's guilt of assault with a deadly weapon and of armed robbery.

**2. Criminal Law § 109—**

The court is required to submit the question of defendant's guilt of less degrees of the crime included in the indictment only in those instances in which there is evidence which would permit a conclusion of defendant's guilt of such less degrees.

**3. Robbery § 1—**

Robbery is the taking of another's personal property from his person or in his presence, against his will, by violence or intimidation, with intent to deprive the owner permanently of his property, and our statute, G.S. 14-87, merely provides a more severe punishment for common law robbery which is attempted or accomplished with the use of a dangerous weapon.

**4. Robbery § 5—    Evidence held not to require court to submit question of defendant's guilt of less degree of crime.**

The evidence tended to show that defendant was apprehended by the owner of a filling station after defendant's accomplice had broken into the station, and that defendant by the use of a pistol disarmed such owner and took his rifle. *Held:* Even conceding that defendant took the rifle "for a temporary use" and that he intended thereafter to abandon the rifle at the first opportunity, the evidence conclusively shows that defendant intended to deprive the owner permanently of the rifle or to leave the recovery of the rifle by the owner to mere chance, and therefore the evidence discloses the *animus furandi,* and does not require the court to submit the qustion of defendant's guilt of assault as a less degree of the offense of robbery with firearms.

BOBBITT, J., concurs in result.

APPEAL by defendant from *Fountain, J.,* December 13, 1965 Mixed Session of PITT.

Defendant was tried and convicted upon two bills of indictment: one charged him with assault with a deadly weapon upon R. W. Spikes; the other, with armed robbery of a rifle from H. H. Adams. Defendant offered no evidence. The evidence for the State tended to show these facts:

About 5:00 a.m. on November 29, 1965, H. H. Adams was awakened by the noise of breaking glass in his service station, which was located about 40 yards from his home. The noise came over an intercom system connecting his bedroom with the service station. He dressed quickly, took his rifle, and set out for the station. Halfway there, he observed one Thomas Henry coming from the station toward him. Henry told Adams that someone had his car and wouldn't

give it back to him. Adams held the rifle on Henry and marched him to the street to see "where his partner was." On the street he saw a police car parked below a 1960 Chevrolet. Policeman Spikes and defendant were standing side-by-side near the parked cars. Adams, "thinking everything was under control," went up to the two with his rifle. When he was within three or four steps of them, defendant pushed the policeman in front of him, pointed a .38 caliber pistol in Adams' face and ordered him to drop the rifle. Adams failed to obey the order and defendant said, "If you don't drop it, I'll kill you." After saying this twice, defendant fired a shot, which struck not far from Adams' feet. Adams then dropped his rifle. Defendant picked it up, told Henry to get into the car, and said, "I'm going to kill the policeman because he's got my license number." After Spikes had assured defendant that he had not taken the license number, Henry said, "Please don't shoot him; let's go." The two men, carrying the rifle and the pistol with them, then drove off towards Vanceboro. As they left, the officer took down the license number of the car. When Adams returned to his station, he observed that a 40 x 40 glass had been broken with a tire tool. He found pliers and a screwdriver at the spot where he had encountered Henry.

Spikes was the night policeman for the town of Grifton. Driving by Adams' service station about 5:00 a.m. he had observed defendant apparently asleep, under the wheel of a parked 1960 Chevrolet automobile. Its motor was running, and the lights were burning on the inside. Spikes rapped on the window glass and asked defendant what he was doing. Defendant told him that he was taking a nap while he waited for his buddy, who had stepped into the bushes on the side of the street opposite the service station. After some conversation between the two, defendant said, "There comes my buddy." When the officer looked around, defendant grabbed his .38 caliber pistol from its holster, put it in the officer's back, and told him not to move or he would shoot him. It was at this time that Adams arrived with Henry.

About 40 minutes after defendant and Henry had driven off with the pistol and rifle, police found Henry standing by the wrecked car about four miles from Grifton. The license plate had been removed from the vehicle, and Adams' rifle was beside a telephone pole just below the place where the car had wrecked.

On December 1, 1965, defendant was in the Craven County jail. A deputy sheriff of Pitt County asked him what he had done with Officer Spikes' pistol. Defendant accompanied the officers to his home and showed them the pistol hidden in a trunk under a tray.

The jury's verdict was "guilty as charged in each of the two bills of indictment." From judgment of imprisonment, defendant appeals.

*T. W. Bruton, Attorney General and James F. Bullock, Assistant Attorney General for the State.*
*A. Louis Singleton for defendant appellant.*

SHARP, J. Defendant makes two assignments of error: (1) the refusal of the court to dismiss the charges against him upon his motions for nonsuit, and (2) the failure of the court to instruct the jury that they might acquit him of the crime of armed robbery charged in the indictment and convict him of an assault with a deadly weapon upon Adams. G.S. 15-169. The first assignment requires no discussion. The factual statement reveals evidence plenary to convict defendant of the charges contained in both bills of indictment. The gist of defendant's appeal is his second assignment of error.

The question presented is this: Assuming the truth of the State's evidence, does it show that the offense committed upon Adams was the robbery with firearms alleged in the indictment? If the circumstances disclosed here would permit the inference that defendant took the rifle without felonious intent, it would have been the duty of the judge to submit to the jury the lesser and included offense of assault. *State v. Hicks,* 241 N.C. 156, 84 S.E. 2d 545; *State v. Lunsford,* 229 N.C. 229, 49 S.E. 2d 410; *State v. Holt,* 192 N.C. 490, 135 S.E. 324. If there could be any other inference, however, the judge would not be under such a duty. *State v. Fletcher,* 264 N.C. 482, 141 S.E. 2d 873; *State v. Parker,* 262 N.C. 679, 138 S.E. 2d 496; *State v. Bell,* 228 N.C. 659, 46 S.E. 2d 834; *State v. Sawyer,* 224 N.C. 61, 29 S.E. 2d 34; *State v. Cox,* 201 N.C. 357, 160 S.E. 358.

Robbery, a common-law offense not defined by statute in North Carolina, is merely an aggravated form of larceny. *State v. Lawrence,* 262 N.C. 162, 136 S.E. 2d 595. The use, or threatened use, of firearms or other dangerous weapons in perpetrating a robbery "does not add to or subtract from the common-law offense of robbery," but the statute (G.S. 14-87) provides a more severe punishment for a robbery attempted or accomplished with the use of a dangerous weapon. *State v. Chase,* 231 N.C. 589, 58 S.E. 2d 364. Robbery is " 'the taking, with intent to steal, of the personal property of another, from his person or in his presence, without his consent or against his will, by violence or intimidation.' " *State v. Lunsford, supra* at 231, 49 S.E. 2d at 412. The taking must be done *animo furandi,* with a felonious intent to appropriate the goods taken to some use or purpose of the taker. The intent to convert to one's own use, however, "is met by showing an intent to deprive the owner of his property permanently for the use of the taker, although he might have in mind to benefit another." *State v. Kirkland,* 178

N.C. 810, 813, 101 S.E. 560, 562. "It is not necessary to constitute larceny that the taking should be in order to convert the thing stolen to the pecuniary advantage or gain of the taker. It is sufficient if the taking be fraudulent, and with the intent wholly to deprive the owner of the property." Rapalje, Larceny & Kindred Offenses § 20 (1892); Annot.: 18 Am. & Eng. Ann. Cas. 824 (1911). "Although a person may wrongfully take the goods, yet unless he intended to assume the property in them, and to convert them to his own use, it will amount to a trespass only, and not to a felony. . . . (T)he distinction between robbery and forcible trespass is, that in the former there is, and in the latter there is not, a felonious intention to take the goods, and appropriate them to the offender's own use." *State v. Sowls*, 61 N.C. 151, 153-54. *Accord, State v. Spratt*, 265 N.C. 524, 144 S.E. 2d 569. See David J. Sharpe, *Forcible Trespass to Personal Property*, 40 N. C. L. Rev. 252 (1961).

In robbery, as in larceny, the taking of the property must be with the felonious intent *permanently* to deprive the owner of his property. *State v. McCrary*, 263 N.C. 490, 139 S.E. 2d 739; *State v. Lawrence, supra; State v. Lunsford, supra;* 46 Am. Jur., Robbery § 10 (1943); 32 Am. Jur., Larceny § 37 (1941). Thus, if one disarms another in self-defense with no intent to steal his weapon, he is not guilty of robbery. *State v. Lunsford, supra.* If he takes another's property for the taker's immediate and temporary use with no intent permanently to deprive the owner of his property, he is not guilty of larceny. *State v. McCrary, supra.* See 2 Bishop, Criminal Law (9th Ed.) §§ 840-852 (1923).

Defendant here clearly intended to appropriate the rifle to a use inconsistent with its owner's property rights. Assuming that defendant's immediate purpose was to deprive Adams of a weapon so Adams could not use it against him or prevent his escape, still this is not in the least inconsistent with an intent permanently to deprive Adams of his rifle. The narrow question here is whether the circumstances under which defendant took the rifle are susceptible to the inference that he had any intent other than that of permanently depriving Adams of the weapon.

In *State v. Davis*, 38 N.J.L. 176, 20 Am. Rep. 367, the defendant Davis took a horse and carriage which was standing in front of a residence and drove it rapidly away near midnight. The next day, when detection became imminent, Davis abandoned the horse and carriage several miles from where it was taken. The horse was exhausted from much driving and want of food. Davis had made no effort to return the property or to apprise its owner where his property could be found. In holding defendant guilty of larceny, the court said with reference to his taking:

"It is not a mere temporary taking which may consist with an intent to return, but a taking that may result by a natural and immediate consequence in the entire loss and deprivation of the property to the owner. An abandonment to mere chance is such reckless exposure to loss that the guilty party should be held criminally responsible for an intent to lose.

"If a person take another's watch from his table, with no intent to return it, but for the purpose of timing his walk to the station to catch a train, and when he reaches there leaves it on the seat, for the owner to get it back or lose it, as may happen. If a man takes another's axe with no intent to return it, but to take it to the woods to cut trees, and after he has finished his work cast it in the bushes, at the owner's risk of losing it, such reckless conduct would be accounted criminal. It is true that the probability of finding the horse and wagon may be greater than that of recovering the watch or axe, because they are larger and more difficult to conceal, but the intent is not to be measured by such nice probabilities; rather by the broader probability that the owner may lose his property, because the taker has no purpose of ever returning it to him." *Id.* at 369.

The severe punishment of felonies under the old English law, as the opinion in *State v. Davis, supra,* pointed out, led to some decisions *contra.* In *Philipps and Strong's Case,* 2 East, Pleas of the Crown 662, the defendants were indicted for stealing a mare and a gelding from one Goulter, who kept an inn. They took the animals and rode them to Lechlade, 33 miles away. There, they left them at different inns to be fed and cleaned for their return in three hours. They did not return and were later arrested 14 miles away while walking towards Farringdon. The jury, upon a special verdict, found that when defendants took the horses, they merely intended to ride them to Lechlade, to leave them there, and to make no further use of them.

"Upon this finding . . . in Trinity term, 1801, the Judges, *(dissentiente* Grose, J. *et dubitante* Lord Alvanley (a),) held it to be only a trespass and no felony. For there was no intention in the prisoners to change the property, or make it their own; but only to use it for a special purpose, *i. e.* to save their labour in travelling. The Judge who dissented thought the case differed from those first above-mentioned; because here there was no intention to return the horses to the owner, but, for aught the prisoners concerned themselves, to deprive him of them. But the rest agreed that it was a question for the jury; and that if

they had found the prisoners guilty generally upon this evidence, the verdict could not have been questioned." *Id.* at 663.

In *Rex v. Crump,* 1 Car. & P. 685, 171 Eng. Rep. 1357, defendant was indicted for stealing a horse, three bridles, two saddles, and a bag. He went to the owner's stable and took away the horse and the other property all together. Some distance away, he abandoned the horse and proceeded on foot to Tewkesbury, where he was arrested while attempting to sell the saddles. The court instructed the jury that if defendant, intending to steal the other articles, took the horse only in order to get off more conveniently with the other property, "as it were, borrowed the horse for that purpose, he would not be, in point of law, guilty of stealing the horse." The verdict was "not guilty of stealing the horse — guilty of stealing the rest of the property." As Scudder, J., pointed out in *State v. Davis, supra,* "It is odd that such a nice distinction and division of intention should be made dependent on the kind of property taken at the same time."

In *Rex v. Holloway,* 5 Car. & P. 525, 172 Eng. Rep. 1082, it was held, "If a poacher take a gun by force from a gamekeeper, under the impression that it may be used against him, it is not felony, though he state afterwards that he will sell the gun, and it be not subsequently heard of."

In contrast to the severe penalties of the old English law, the punishments provided for robbery and larceny by the law today do not evoke such nice distinctions in defining felonious intent. Where the evidence does not permit the inference that defendant ever intended to return the property forcibly taken but requires the conclusion that defendant was totally indifferent as to whether the owner ever recovered the property, there is no justification for indulging the fiction that the taking was for a temporary purpose, without any *animus furandi* or *lucri causa.*

In *State v. Smith,* 68 S.W. 2d 696 (Mo. Sup. Ct.), prisoners, after a jail break, took an automobile at revolver point in order to make good their escape. In affirming a conviction of armed robbery, the court said, "We think the taking of the automobile was done with the intention of depriving the owner permanently, even though they later abandoned it."

It would be unreasonable to assume that defendant, fleeing from arrest for the crime of felonious breaking and entering, had any expectation of returning the rifle he had taken in order to effect his escape. To do so by any certain means would be to invite detection and capture. For the purpose of decision here, we assume that defendant took the rifle "for temporary use" and that after it had served his purpose of escape, he intended to abandon it at the first opportunity lest it lead to his detection. Such procedure, however,

would leave Adams' recovery of his rifle to mere chance and thus constitute "such reckless exposure to loss" that it is consistent only with an intent permanently to deprive the owner of his property. See 32 Am. Jur., Larceny § 37 (1941). In abandoning it, defendant put it beyond his power to return the rifle and showed total indifference as to whether Adams ever recovered his rifle. When, in order to serve a temporary purpose of his own, one takes property (1) with the specific intent wholly and permanently to deprive the owner of it, or (2) under circumstances which render it unlikely that the owner will ever recover his property and which disclose the taker's total indifference to his rights, one takes it with the intent to steal *(animus furandi)*. A man's intentions can only be judged by his words and deeds; he must be taken to intend those consequences which are the natural and immediate results of his acts. If one who has taken property from its owner without any color of right, his intent to deprive the owner wholly of the property "may, generally speaking, be deemed proved" if it appears he "kept the goods as his own 'til his apprehension, or that he gave them away, or sold or exchanged or destroyed them. . . ." *State v. South,* 28 N.J.L. 28, 30, 75 Am. Dec. 250, 252.

In this case, there is no conflicting evidence relating to the element of the armed robbery charged in the indictment. The words of Connor, J., in *State v. Cox, supra* at 361, 160 S.E. at 360 are pertinent:

> "The statute (G.S. 15-169) is not applicable, where, as in the instant case, all the evidence for the State, uncontradicted by any evidence for the defendant, if believed by the jury, shows that the crime charged in the indictment was committed as alleged therein. . . . (T)here was no evidence tending to support a contention that the defendants, if not guilty of the crime charged in the indictment, were guilty of a crime of less degree."

We hold that the evidence in this case necessarily restricted the jury to return one of two verdicts, namely, guilty of robbery with firearms as charged in the indictment, or not guilty.

No error.

BOBBITT, J., concurs in result.