STATE *v.* STALNAKER.

---

STATE OF NORTH CAROLINA v. OLETA STALNAKER.

(Filed 10 July 1968.)

**1. Homicide § 16; Criminal Law § 89—**

Where statement of the deceased which tended to exonerate defendant of the homicide was admitted into evidence, defendant was not prejudiced by the trial court's refusal to rule that the statement was a dying declaration, since such a ruling would have added no credibility or unusual dignity to the testimony of the witness or to the declaration itself.

**2. Same—**

A dying declaration by no means imports absolute verity; it is subject to impeachment or corroboration in the same manner as the testimony of a witness.

**3. Same—**

A dying declaration of the deceased which tends to exonerate the defendant of the homicide may be impeached or contradicted by the State by evidence that the deceased made a subsequent statement three hours later inconsistent with the declaration offered by the defendant, and whether the State's evidence qualifies as a dying declaration is immaterial.

**4. Criminal Law § 115—**

The provisions of G.S. 15-169 and G.S. 15-170 are applicable only when there is evidence tending to show that a defendant may be guilty of a lesser offense.

**5. Homicide § 30—**
Where the State's evidence is to the effect that defendant set fire to the deceased after verbally threatening to do so and after throwing burning paper in his direction on two occasions, and there is no evidence from which a reasonable inference can be drawn that the defendant was later burned accidentally, the trial court properly refused to submit to the jury the issue of defendant's guilt of involuntary manslaughter.

APPEAL by defendant from *Hasty, J.,* 23 October 1967, Schedule A Session, MECKLENBURG Superior Court.

Defendant was charged in a bill of indictment with the felony of second degree murder. The charge grew out of an investigation of the death by burning of defendant's husband, George Stalnaker. To the charge defendant pleaded not guilty.

The State's evidence tended to show the following:

On 30 July 1967 George Stalnaker was in his back yard. The defendant came to the back door of the residence and told her husband, George Stalnaker, to go somewhere and get him a room because she wasn't going to let him in the house, and that if he didn't leave, she was going to set him afire. Once or twice George Stalnaker went to the back door and knocked and would then go back and sit on the back porch. He sat there on his back porch most of the afternoon. On two occasions during the afternoon someone threw burning paper out of the back door in George Stalnaker's direction where he was sitting on the back porch. George Stalnaker turned and asked, "What are you trying to do — set me afire?" At about dark George Stalnaker was seen standing in the back yard with his arms raised and was burning from about his waist up and was hollering for help. Defendant did not come out of the house.

Neighbors ran and wrapped blankets around him to smother the fire; the fire department and the police and the ambulance were called. George Stalnaker was taken to the hospital where he died some 30 days later.

The defendant's evidence tended to show the following:

During the day of 30 July 1967 George Stalnaker had been drinking and the defendant had locked him out of the house, put out some clean clothes and told him to go get himself a room, get cleaned up and sober enough to come back and get the rest of his stuff because she could not stand it any longer. The defendant was alone in the house and she lay on the couch in the living room and watched television during the afternoon and was watching television when she heard George holler out in the back. She went to the back window and saw one of the neighbors standing there with a blanket and she went back in the living room and got the blanket in there and threw it out the window to him. She did not throw fire

on her husband and she didn't know what was going on because she thought he was just drunk out there in the back yard.

The jury found the defendant guilty of manslaughter, and from the verdict and judgment entered thereon, defendant appealed.

*T. W. Bruton, Attorney General by William P. Briley, Trial Attorney, for the State.*
*Guy E. Possinger for defendant appellant.*

BROCK, J. The defendant offered the testimony of a niece of the defendant that while deceased was lying on the ground in his back yard after being burned, she asked him, "George, what happened?" George looked up at her and said, "Leta didn't do this."

Upon objection by the State, the trial judge overruled the objection and allowed the testimony; but the trial judge ruled that George Stalnaker's statement was not a dying declaration. The trial judge ruled that since the defense opened the door to hearsay evidence, the State could explore the whole area of hearsay evidence. The defendant assigns as error that the trial judge refused to rule that the statement was a "dying declaration."

The defendant was in no way prejudiced by the ruling of the trial judge that the statement was not a dying declaration; the testimony of the statement was allowed in evidence over objection anyway. A ruling that it was a dying declaration would have added no credibility or unusual dignity to the testimony given by the witness, nor to the declaration itself. "A dying declaration by no means imports absolute verity." *Carver v. U. S.*, 164 U.S. 694, 41 L. Ed. 602. And a dying declaration is subject to impeachment or corroboration in the same manner as the testimony of a witness. Stansbury, N. C. Evidence 2d, § 146. The defendant had the full benefit of the testimony of the witness as to the declaration of the deceased.

The defendant further assigns as error that the trial judge ruled that the State could explore the whole area of hearsay testimony since the defense had opened the door. From the Record on Appeal and the brief of the defendant it is clear that this ruling was made in chambers and not in open Court. Also it is obvious that the trial judge was merely stating the correct law of evidence concerning impeachment if the declaration was offered by defendant and allowed into evidence. The State would be entitled to impeach the declaration whether allowed as a dying declaration or not. Stansbury, N. C. Evidence 2d, § 146, p. 363. Whether impeaching or inconsistent declarations are admissible as dying declarations or not is immaterial, since they are admissible as tending to impeach the declaration of the deceased which was already admitted. *Carver v. U. S., supra.*

The defendant assigns as error that the trial judge allowed the State, on rebuttal, to introduce evidence that the deceased made a statement about three hours later that was inconsistent with the declaration offered by the defendant. The defendant argues that the defendant's evidence should have qualified as a dying declaration, and the State's evidence did not so qualify; therefore the State should not have been allowed to place in evidence the inconsistent statement of the deceased. Without undertaking to rule upon whether the defendant's or the State's evidence actually qualified as dying declarations, it is sufficient to say that the admission of defendant's evidence of a declaration by deceased was the equivalent of ruling that it qualified as a dying declaration. But, whether the State's evidence of a declaration qualified as a dying declaration is immaterial, because in either event it was admissible to impeach or contradict defendant's evidence of a declaration. Stansbury, N. C. Evidence 2d, supra; State v. Debnam, 222 N.C. 266, 22 S.E. 2d 562.

The defendant further assigns as error that the trial judge submitted the case to the jury upon only three possible verdicts: guilty of murder in the second degree, guilty of manslaughter, or not guilty. Defendant urges that the lesser offense of involuntary manslaughter should have been submitted to the jury also.

The State's evidence in this case is to the effect that defendant set fire to deceased after having verbally threatened to do so, and after throwing fire at him on two occasions; no reasonable inference could be drawn that it was later done accidentally. The only evidence to the contrary is that defendant did not know anything about the fire, that she was lying on the couch inside the house watching television. There is therefore no reasonable inference from the evidence in this case which would support a verdict of involuntary manslaughter. The provisions of G.S. 15-169 and G.S. 15-170 are applicable only when there is evidence tending to show that a defendant may be guilty of a lesser offense. State v. Jones, 249 N.C. 134, 105 S.E. 2d 277. The case of State v. Smith, 268 N.C. 167, 150 S.E. 2d 194, cited by defendant in support of this assignment of error holds the same as State v. Jones, supra. The first headnote by the reporter of Smith seems to be in error, and apparently misled counsel.

We have carefully examined all of defendant's assignments of error. In the trial of defendant we find

No error.

MALLARD, C.J., and PARKER, J., concur.