STATE OF NORTH CAROLINA
v.
TERRY DEAN CORRY
No. COA08-11
Court of Appeals of North Carolina
Filed November 18, 2008
This case not for publication
Attorney General Roy A. Cooper, III, by Assistant Attorney General Brandon L. Truman, for the State.
Robert W. Ewing for defendant-appellant.
HUNTER, Judge.
Terry Dean Corry ("defendant") appeals from final judgments entered against him in Gaston County Superior Court in accordance with jury verdicts finding him guilty of: (1) robbery with a dangerous weapon, (2) assault with a deadly weapon with intent to kill inflicting serious injury, (3) possession of a firearm by a felon, and (4) second degree trespass. Defendant received three consecutive sentences. He received active terms of 116-169 months imprisonment for assault with a deadly weapon with intent to kill inflicting serious injury and 103-133 months imprisonment for robbery with a dangerous weapon. Defendant received sixteen to twenty months imprisonment for the other two charges, which was suspended on the condition that defendant be placed on intensive probation. After careful review, we find no error.

I. Background
The State's evidence tended to show[1] the following regarding an altercation that occurred between defendant and seventy-one-year-old Fred Gilliard ("Mr. Gilliard") outside Mr. Gilliard's residence on 30 November 2006. On that date at approximately 11:00 p.m., defendant and his friend "John-John" went to the Gilliard residence to speak with defendant's girlfriend, Elesa Bush ("Ms. Bush"). Ms. Bush, Mr. Gilliard's niece by marriage, lived at the Gilliard residence. Defendant was staying with John-John, who lived "behind" the Gilliard residence.
Ms. Bush testified that at approximately 11:00 p.m., she heard a knock at the door. Everyone in the house was in bed, and Mr. Gilliard told Ms. Bush not to answer the door. However, Ms. Bush looked outside and saw defendant standing behind John-John. Defendant told Ms. Bush that she needed to come outside because he needed to talk to her. Ms. Bush testified that she told defendant that Mr. Gilliard did not want her to open the door. She then returned to her bedroom and began talking to her sister, Samantha Hunter ("Ms. Hunter"), who was spending the night. Defendant remained on the Gilliard property and continued talking through the front door.
Following Ms. Bush's return to her bedroom, she heard Mr. Gilliard state that he was "tired of this shit[,]" and that "he was going to run [defendant] off from his house." Mr. Gilliard testified that he went outside and demanded that defendant leave his property; defendant refused and an argument ensued. Ms. Bush testified that as the argument escalated, defendant told Mr. Gilliard "you always talking junk about the gun and you ain't got that gun now[.]"
After defendant made this statement about the gun, Mr. Gilliard went inside the house and returned outside with his loaded shotgun. While Mr. Gilliard was inside retrieving his firearm, he stated that "he was tired of this M-Fing shit[,]" and that "[h]e [was] going to run those mother fuckers off from his house." While Mr. Gilliard was inside, defendant went to the carport, which was located near the front porch of the Gilliard residence, and picked up a shovel and an axe handle. Mr. Gilliard returned to the front porch with the firearm and again demanded that defendant leave his property. Again, defendant refused, and the two men continued to argue in close physical proximity.
At some point, Mr. Gilliard attempted to cock the weapon. Both Ms. Bush and Ms. Hunter testified that Mr. Gilliard never pointed the gun at defendant. Mr. Gilliard testified that he never intended to shoot defendant and that he just wanted defendant to leave his property. Ms. Bush testified that after cocking the gun, Mr. Gilliard repeatedly asked defendant to leave the property, but defendant refused to comply. She further testified that while Mr. Gilliard was telling defendant to leave, defendant "had [the] stickand the shovel in his hands, and he was . . . flinching like he was going to hit [Mr. Gilliard]."
Ms. Hunter testified that at some point after Mr. Gilliard had cocked his shotgun, defendant struck him with the axe handle, first in the back and then in the hand, which caused the gun to discharge and Mr. Gilliard to drop it. The gun fired a single shot, which struck the Gilliard residence. Defendant then hit Mr. Gilliard across the face with the shovel, causing him to fall to the ground. Ms. Hunter testified that after being hit by the shovel, Mr. Gilliard stated that he was "going to kill this M-F," that Mr. Gilliard "was laying up against the [house] . . . and couldn't move[,]" and that "his eyeball thing was hanging out." She also testified that even though Mr. Gilliard appeared vulnerable and the gun was not in his possession, defendant was about to strike Mr. Gilliard with the shovel again until she interceded. Defendant then fled and took the gun and shovel with him.
Officer Dale Garren ("Officer Garren") testified that after apprehending defendant nearby defendant's residence, defendant showed him the gun, which was concealed outside of a neighbor's residence, and the shovel, which had been left "on the side of" defendant's residence. He further testified that the gun had fired a single shot, which had struck the Gilliard residence. Due to defendant striking him with the shovel, Mr. Gilliard lost the use of his left eye.

II. Analysis
Defendant asserts the trial court erred by denying his respective motions to dismiss the robbery with a dangerous weapon charge and the assault with a deadly weapon with intent to kill inflicting serious injury charge. Defendant also argues the trial court committed plain error by failing to instruct the jury on the affirmative offense of justification regarding his possession of a firearm by a felon charge. We find these arguments to be without merit and address each in turn.

A. Motions to Dismiss
"When a defendant moves for dismissal, the trial court is to determine whether there is substantial evidence (a) of each essential element of the offense charged, or of a lesser offense included therein, and (b) of defendant's being the perpetrator of the offense. If so, the motion to dismiss is properly denied."
State v. Bellamy, 172 N.C. App. 649, 656, 617 S.E.2d 81, 87 (2005) (quoting State v. Earnhardt, 307 N.C. 62, 65-66, 296 S.E.2d 649, 651-52 (1982)), appeal dismissed and disc. review denied, 360 N.C. 290, 628 S.E.2d 384 (2006). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." State v. Smith, 300 N.C. 71, 78-79, 265 S.E.2d 164, 169 (1980) (citations omitted). In considering a motion to dismiss, "[t]he evidence must be examined in the light most favorable to the state, and the state is entitled to every reasonable intendment and inference to be drawn therefrom. Any contradictions or discrepancies in the evidence are for the jury to resolve and do not warrant dismissal." State v. Rasor, 319 N.C. 577, 585, 356 S.E.2d 328, 333-34 (1987) (citations omitted). Ourreview is de novo. See, e.g., Earnhardt, 307 N.C. at 66, 296 S.E.2d at 652-53.
The essential elements of robbery with a dangerous weapon are: "1) the unlawful taking or attempt to take personal property from the person or in the presence of another; 2) by use or threatened use of a firearm or other dangerous weapon; 3) whereby the life of a person is endangered or threatened." State v. Wiggins, 334 N.C. 18, 35, 431 S.E.2d 755, 765 (1993) (citation omitted). Here, defendant's sole argument is that the State's evidence was insufficient to establish his intent to permanently deprive Mr. Gilliard of his gun and shovel.[2] Specifically, he contends that a reasonable mind could only conclude that he took the shovel and gun to disarm Mr. Gilliard and to protect himself from harm. This argument is without merit.
"In robbery, as in larceny, the taking of the property must be with the felonious intent permanently to deprive the owner of his property." State v. Smith, 268 N.C. 167, 170, 150 S.E.2d 194, 198 (1966) (citations omitted). Our Supreme Court has held:
When, in order to serve a temporary purpose of his own, one takes property (1) with the specific intent wholly and permanently to deprive the owner of it, or (2) under circumstances which render it unlikely that the owner will ever recover his property and which disclose the taker's total indifference to his rights, one takes it with the intent to steal (animus furandi). A man's intention scan only be judged by his words and deeds; he must be taken to intend those consequences which are the natural and immediate results of his acts. If one who has taken property from its owner without any color of right, his intent to deprive the owner wholly of the property "may, generally speaking, be deemed proved" if it appears he "kept the goods as his own `til his apprehension, or that he gave them away, or sold or exchanged or destroyed them[.]"
Id. at 173, 150 S.E.2d at 200 (citation omitted). Further, where a person abandons property, "'such reckless exposure to loss'" is "consistent only with an intent permanently to deprive the owner of his property." Id. at 172-73, 150 S.E.2d at 200 (citation omitted).
[W]hen the circumstances of the alleged armed robbery reveal an intent to permanently deprive the owner of his property and a taking effectuated by the use of a dangerous weapon, it makes no difference whether the intent to steal was formulated before the use of force or after it, so long as the theft and the use of force can be perceived by the jury as constituting a single transaction.
Rasor, 319 N.C. at 587, 356 S.E.2d at 335 (citation omitted). However, "if one disarms another in self-defense with no intent to steal his weapon, he is not guilty of robbery." State v. Smith, 268 N.C. at 170, 150 S.E.2d at 198 (citation omitted).
Viewing the evidence in the light most favorable to the State and in accordance with the applicable law, we believe a reasonable mind could conclude: (1) that defendant intended to permanently deprive Mr. Gilliard of his gun and shovel, especially given defendant's disregard for the property, and (2) that defendant removed these items from the Gilliard premises to facilitate his flight and to avoid apprehension rather than in self-defense. Ms. Bush and Ms. Hunter testified that Mr. Gilliard never pointed the gun at defendant, and Mr. Gilliard testified he merely wanted defendant to leave his property. Officer Garren testified that the single shot from the shotgun struck the Gilliard residence, also supporting the conclusion that the gun was not pointed at defendant at the time of discharge. Ms. Hunter testified that Mr. Gilliard did not threaten defendant's life until after defendant had hit him with the shovel, at which point Mr. Gilliard was seriously injured and immobilized on the ground, and the gun was not in his control. Also, Ms. Hunter testified that defendant did not grab the gun until he fled from the property. Thus, defendant had numerous alternatives available to him to defend himself instead of taking the gun and shovel from the Gilliard premises, including: (1) removing the gun from Mr. Gilliard's reach, (2) removing the ammunition, (3) giving the firearm and shovel to Ms. Hunter or Ms. Bush, or (4) reaching a point of safety and contacting law enforcement about the altercation. Defendant did not pursue any of these options; rather, he removed these items and did not disclose their whereabouts until his apprehension by law enforcement. Thus, we hold the trial court did not err in denying defendant's motion to dismiss the robbery with a dangerous weapon charge.
The essential elements of assault with a deadly weapon with intent to kill inflicting serious injury are: "(1) an assault; (2) with a deadly weapon; (3) with intent to kill; and (4) inflicting serious injury not resulting in death." State v. Washington, 142N.C. App. 657, 661, 544 S.E.2d 249, 252, appeal dismissed and disc. review denied, 353 N.C. 532, 550 S.E.2d 165 (2001). In his brief, defendant does not argue that the State failed to establish any of these four elements. Accordingly, defendant's assignments of error pertaining to the sufficiency of the evidence as to the four elements are deemed abandoned. N.C.R. App. P. 28(b)(6); see also Elliot, 344 N.C. at 276, 475 S.E.2d at 218. Here, the sole argument raised by defendant is that the State's evidence unequivocally supports a conclusion that he was acting in self-defense as a matter of law. This argument is without merit.
Even if all of the elements of assault with a deadly weapon with intent to kill are established, a defendant may be excused from the crime, if "it was necessary or reasonably appeared to be necessary for him to kill his adversary in order to protect himself from death or great bodily harm." State v. Bush, 307 N.C. 152, 160, 297 S.E.2d 563, 569 (1982) (citation omitted). However, our Supreme Court has held:
The right to act in self-defense rests upon necessity, real or apparent, and a person may use such force as is necessary or apparently necessary to save himself from death or great bodily harm in the lawful exercise of his right of self-defense. A person may exercise such force if he believes it to be necessary and has reasonable grounds for such belief. The reasonableness of his belief is to be determined by the jury from the facts and circumstances as they appeared to the accused at the time. However, the right of self-defense is only available to a person who is without fault, and if a person voluntarily, that is aggressively and willingly, enters into a fight, he cannot invoke the doctrine of self-defense unless he first abandons the fight, withdraws from itand gives notice to his adversary that he has done so.
State v. Marsh, 293 N.C. 353, 354, 237 S.E.2d 745, 747 (1977) (citations omitted). In other words, if a defendant is an aggressor and does not adequately withdraw from the confrontation, this negates his ability to assert self-defense.
Viewed in the light most favorable to the State, we believe sufficient evidence exists to allow a jury to decide the issue of whether defendant was an aggressor, and consequently, whether the right to self-defense was available to him. Here, instead of complying with Mr. Gilliard's initial request to leave the property, defendant refused and continued to argue. Further, instead of leaving the premises when Mr. Gilliard went inside to retrieve his gun, defendant armed himself with a shovel and an axe handle. When Mr. Gilliard returned with the gun and again told him to leave, defendant refused, continued to argue, and made movements indicating that he was going to strike Mr. Gilliard. All of the evidence showed that the gun only fired inadvertently and that Mr. Gilliard never pointed the gun at defendant. Finally, there was no evidence that defendant made any effort to withdraw from the altercation prior to the assault.
In sum, viewed in the light most favorable to the State, we believe sufficient evidence exists to allow a reasonable mind to conclude that defendant was the aggressor and thus could not avail himself of self-defense. Thus, we hold the trial court did not err in denying defendant's motion to dismiss the assault with a deadly weapon with intent to kill inflicting serious injury charge.

B. Justification and Plain Error
Finally, defendant admits that he did not request a special jury instruction on justification as a defense to the charge of possession of a firearm by a felon but argues the trial court committed plain error by not instructing the jury on justification as an affirmative defense to this charge. We disagree.
"[T]he plain error rule . . . is always to be applied cautiously and only in the exceptional case where, after reviewing the entire record, it can be said the claimed error is a `fundamental error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done,' or `where [the error] is grave error which amounts to a denial of a fundamental right of the accused,' or the error has `"resulted in a miscarriage of justice or in the denial to appellant of a fair trial"' or where the error is such as to `seriously affect the fairness, integrity or public reputation of judicial proceedings' or where it can be fairly said `the instructional mistake had a probable impact on the jury's finding that the defendant was guilty.'"
State v. Odom, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983) (citations omitted; alterations in original). "In deciding whether a defect in the jury instruction constitutes `plain error,' the appellate court must examine the entire record and determine if the instructional error had a probable impact on the jury's finding of guilt." Id. at 661, 300 S.E.2d at 378-79 (citation omitted).
Many federal circuit courts have recognized the availability of the affirmative defense of justification where a defendant-felon is charged with possessing a firearm in violation of federal law. E.g. U.S. v. Deleveaux, 205 F.3d 1292 (11th Cir. 2000). However, under federal law, the justification defense is only available in "extraordinary circumstances" and the defendant must show:
"(1) that [he] was under unlawful and present, imminent, and impending threat of death or serious bodily injury; (2) that [he] did not negligently or recklessly place himself in a situation where he would be forced to engage in criminal conduct; (3) that [he] had no reasonable legal alternative to violating the law; and (4) that there was a direct causal relationship between the criminal action and the avoidance of the threatened harm."
Id. at 1297 (footnote and citations omitted). This Court has not decided whether the justification defense is available to a defendant charged with violating North Carolina's felony firearm statute; however, in three cases, this Court has looked to the rationale and rule stated in Deleveaux, considered whether it was error for the trial court not to instruct the jury on justification, and resolved this issue against the defendants. State v. Napier, 149 N.C. App. 462, 465, 560 S.E.2d 867, 869 (2002) ("[w]ithout ruling on the general availability of the justification defense in possession of a firearm by a felon cases in North Carolina, we conclude that under the facts of this case defendant was not entitled to a justification instruction") (citation omitted); see also State v. Craig, 167 N.C. App. 793, 606 S.E.2d 387 (2005); State v. Boston, 165 N.C. App. 214, 598 S.E.2d 163 (2004).
After a thorough review of the evidence, we conclude that even assuming, arguendo, that the defense of legal justification were available, the evidence here does not support an instruction on justification as it is not sufficient to establish either that defendant "was under unlawful and present, imminent, and impending threat of death or serious bodily injury" between the time he removed the firearm from the Gilliard property and the time he revealed its location to law enforcement, or that defendant did not "negligently or recklessly place himself in a situation where he would be forced to engage in criminal conduct." Deleveaux, 205 F.3d at 1297. Accordingly, we hold the trial court did not commit plain error by not instructing the jury on justification.
In sum, after careful review, we find no error in defendant's trial.
No error.
Judges ELMORE and GEER concur.
Report per Rule 30(e).
NOTES
[1] Defendant did not present evidence.
[2] Defendant makes no argument in his brief as to the purported constitutional violations he raised in his assignments of error. Accordingly, these assignments of error are abandoned. N.C.R. App. P. 28(b)(6); see also State v. Elliott, 344 N.C. 242, 276, 475 S.E.2d 202, 218 (1996).