STATE OF NORTH CAROLINA v. DONALD JULE WATTS

No. 7410SC1029

(Filed 19 March 1975)

Larceny § 7— taking property to coerce payment by owner — intent to
 return — no larceny
     The State's evidence was insufficient for the jury in a prosecution
 for misdemeanor larceny of a television set where it tended to show

State v. Watts

that defendant took the set for the purpose of coercing the owner to pay him $150 in return for defendant's promise not to tell others that the owner was a homosexual and that defendant intended to hold the set until the owner paid.

APPEAL by defendant from *Webb, J.* Judgment entered 6 September 1974, in Superior Court, WAKE County. Heard in the Court of Appeals 18 February 1975.

Defendant pled not guilty to the charge in the warrant of larceny of a television set having a value of $157.

For the State, the testimony of James W. Harris tended to show that around midnight, he picked up the defendant near the Union Bus Terminal in Raleigh. After riding around for awhile, Harris asked the defendant if he was interested in homosexual relations, and defendant replied in the affirmative. They rode to Harris's house, arriving there about 12:45 a.m. They went into the bedroom and the defendant began looking at some "sex books". Harris made a sexual advance; defendant submitted, and during homosexual play the defendant suddenly grabbed Harris's head in a hammerlock, then threatened him him with a hammer and a pair of scissors and demanded money; Harris gave defendant his wallet, which contained only $1.00, and credit cards; defendant demanded more money and threatened to call Harris's boss and the police and inform them of his homosexual acts; Harris informed the defendant that he was to receive that morning his paycheck in the sum of $150, which he would give to him; defendant agreed that he would take the money but forced Harris to get his television set and place it and other items in a paper bag, which defendant would hold as security until Harris could get the money. They agreed to make the exchange in a parking lot near the bus station at 9:30 a.m. Then Harris drove the defendant back downtown where he got out of the car with the bag containing the television set and other items. Harris further testified that he was terrified of the man; that he avoided any kind of fighting; and that he did not want to do anything that would cause any violence.

Harris reported these facts to the police and they formulated a plan to observe Harris and the defendant make the exchange of money and property. Defendant met Harris in the parking lot at 9:30 a.m. as agreed. When the plan for the exchange of the money for the television set went awry, a city policeman approached the defendant in the bus station. At the request

of the officer, the defendant went to the police station, admitted that he had taken the television set and gave the officer the key to a locker in the bus terminal. There the officer found the television set.

At the close of the State's evidence, the defendant moved for judgment as of nonsuit, upon denial offered no evidence, and renewed his motion, which was again denied. The jury found the defendant guilty as charged, and from a judgment imposing a term of imprisonment, the defendant appealed.

*Attorney General Edmisten by Associate Attorney Noel Lee Allen for the State.*

*Crisp, Bolch and Smith by Benjamin F. Clifton, Jr., for the defendant.*

CLARK, Judge.

Defendant assigns as error the failure of the trial court to grant his motion for judgment of nonsuit on the grounds that there was no evidence of any intent to permanently deprive the owner of the television set.

Larceny is a common law offense. In *State v. Griffin,* 239 N.C. 41, 45, 79 S.E. 2d 230, 232 (1953), the court defines larceny as " . . . a wrongful taking and carrying away of the personal property of another without his consent, and this must be done with felonious intent; that is, with intent to deprive the owner of his property *and* to appropriate it to the taker's use fraudulently. . . . " (Emphasis added).

It is obvious that common law larceny does not include every wrongful taking and carrying away of the personal property of another, and that such wrongs, which do not constitute larceny or the violation of some criminal statute, have long been the subject of judicial concern. For instance, in *State v. Long,* 2 N.C. 154 (1795), the defendant was tried in Hillsboro on an indictment charging him with stealing a mare from Samuel Parks in Randolph County. The jury, by its special verdict, found that the defendant borrowed the horse to ride to the home of John Candles, four miles away, and was to return the horse after riding her thither; but that after riding the mare to Candles' home, he forthwith rode her into the County of Lincoln, a distance of some eighty miles, and there sold the mare to Andrew Hoyle, as his own property. Since there was a

division of opinion of the two judges present, they ordered a copy of the special verdict transmitted " . . . to each of the judges of this State, and that they be requested to return their opinions to this Court at the next term. . . . At the next term, October, 1795, the opinion of all the judges was had on this special verdict. Ashe and Macay, JJ., were of the opinion it was felony; Williams and Haywood, JJ., that it was not; and the prisoner was recommended to mercy, and obtained his pardon." 2 N.C. at 157.

In some jurisdictions, including North Carolina, the "intent to appropriate the goods to his own use" has been eliminated and is not now an essential element of the crime of larceny. In *State v. Lee,* 282 N.C. 566, 571, 193 S.E. 2d 705, 708 (1973), the Court said:

" . . . To constitute larceny it is not required that the purpose of the taking be to convert the stolen property to the pecuniary advantage or convenience of the taker. It is sufficient if the taking be fraudulent and with the intent wholly to deprive the owner of his property. . . . "

In a number of cases which purport to apply common law principles, persons have been held guilty of larceny in spite of the fact that it was not the intention of the taker permanently to deprive the owner of his property. 52A C.J.S., Larceny, § 27 (1968). There appears to be some erosion of the common law principle of permanent deprivation in this State. In *State v. Smith,* 268 N.C. 167, 150 S.E. 2d 194 (1966), the defendant, in the course of a robbery, disarmed and took the rifle of a filling station owner. The rifle was found shortly thereafter near the wrecked getaway car. Sharp, J., (now Chief Justice) in the opinion for the Court which found no error, wrote: "In robbery, as in larceny, the taking of the property must be with the felonious intent *permanently* to deprive the owner of his property." 268 N.C. at 170. After reviewing early English and American decisions, she added: "In contrast to the severe penalties of the old English law, the punishments provided for robbery and larceny by the law today do not evoke such nice distinctions in defining felonious intent. Where the evidence does not permit the inference that defendant ever intended to return the property forcibly taken but requires the conclusion that defendant was totally indifferent as to whether the owner ever recovered the property, there is no justification for indulging the fiction

that the taking was for a temporary purpose, without any *animus furandi* or *lucri causa*." 268 N.C. at 172.

In the present case, the defendant was charged only with misdemeanor larceny of a television set. All of the evidence tends to show that he took the set for the purpose of coercing the owner to pay him $150.00, intending to hold the set until the owner paid. There is a split of authority as to whether such a taking for the purpose of coercing the owner would constitute larceny. See 52A C.J.S., Larceny, § 27 b.(2) (1968). But since *State v. Smith, supra,* is not applicable here and we do not judicially expand the common law principles of larceny to include this factual situation, we conclude that there was insufficient evidence on the essential elements of larceny to warrant submitting the case to the jury and that consequently. the court erred in its failure to grant defendant's motion for judgment of nonsuit.

This conclusion eliminates the need for comment on the assigned error of the trial court in its instructions relating to permanent deprivation. However, we consider it appropriate to point out that the trial court, in charging the jury in larceny and robbery cases where the factual situation raises a question as to the intent to deprive permanently, should instruct on this element and add that while temporary deprivation will not suffice, if the defendant did not ever intend to return the property and was totally indifferent as to whether the owner ever recovered it, then that would constitute an "intent to permanently deprive."

Reversed.

Judges PARKER and HEDRICK concur.