IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA22-814

Filed 15 August 2023

Union County, Nos. 17 CRS 052227, 052232-33

STATE OF NORTH CAROLINA

v.

JOHN LOUIS SPERA, Defendant.

Appeal by Defendant from judgment entered 10 March 2022 by Judge Nathan H. Gwyn, III in Union County Superior Court. Heard in the Court of Appeals 23 May 2023.

*Attorney General Joshua H. Stein, by Assistant Attorney General Andrew L. Hayes, for the State.*

*Thomas, Ferguson & Beskind, LLP, by Kellie Mannette, for Defendant-Appellant.*

RIGGS, Judge.

Defendant John Louis Spera appeals from a judgment following a jury trial, which found him guilty of misdemeanor larceny of a vehicle and robbery with a dangerous weapon. On appeal, Mr. Spera argues that the trial court: (1) abused its discretion by denying his motion for a mistrial after the testifying victim's identification of him as the perpetrator was ruled inadmissible; (2) erred in denying his motion to dismiss the misdemeanor larceny charge for insufficient evidence of intent to permanently deprive the victim of the property taken; and (3) committed

plain error by failing to instruct the jury on the concept of temporary deprivation. After careful review, we hold that the trial court did not err in denying his motion for mistrial but did err in denying his motion to dismiss the misdemeanor larceny charge. As a result, we vacate the misdemeanor larceny conviction in File No. 17CRS052233 and remand for entry of judgment on the lesser-included offense of unauthorized use of a motor vehicle. We leave the remaining conviction undisturbed.

## I.    FACTUAL AND PROCEDURAL HISTORY

On 4 April 2017, recent high school graduate Dustin Perry was invited by his friend and drug dealer, Zackary Phifer, to hang out with two women, Hannah Tarleton and Charity Sharon, at a mobile home in Union County. Mr. Perry picked up Mr. Phifer at his mother's house around 10:00 PM and the two drove in Mr. Perry's pickup truck to the home where Ms. Tarleton and Ms. Sharon were spending the evening. On arrival, Mr. Phifer exited the truck, met with someone at the door, and waved for Mr. Perry to join him. The men headed inside together.

Mr. Perry and Mr. Phifer entered through the living room before heading into a room at the rear of the home. Ms. Tarleton and Ms. Sharon met Mr. Perry and Mr. Phifer in that room; a few minutes later, three or four other men burst into the room. Two of the men were armed, one with a knife and the other with a hammer. Mr. Perry knew the man with the knife as Luther Weathers, but he did not recognize the man with the hammer.

- 2 -

The unknown man with the hammer began shouting "where's the powder, where's the powder," at Mr. Perry and Mr. Phifer. The men then searched Mr. Perry and Mr. Phifer, rifling through the former's wallet and taking his phone and the keys to his truck. The armed robbers then left the room, and Mr. Perry heard them start up his truck and drive away for what Mr. Perry presumed was a joyride. The remaining men, along with Ms. Tarleton and Ms. Sharon, stayed behind with Mr. Perry and Mr. Phifer to ensure that they did not leave the back room.

Roughly thirty minutes after the robbery, the two armed robbers returned to the mobile home, escorted Mr. Perry and Mr. Phifer outside, returned the keys to Mr. Perry, and allowed them to leave unharmed. The man with the hammer did, however, threaten Mr. Perry with harm if he told the police about what had occurred. Mr. Perry found that unspecified "documentation" relating to the truck had been destroyed and a roadside safety kit was missing from the vehicle. Mr. Perry later reported the incident to law enforcement.

Detective James Maye with the Union County Sheriff's Office met and interviewed Mr. Perry about the night in question in May of 2017. Mr. Perry told Detective Maye that the man with the hammer was Black, about 5 feet tall, and bald. Roughly four years later, in 2021, the district attorney showed Mr. Perry a picture of Mr. Spera—who is white, 5'9", and has long hair—and Mr. Perry affirmatively identified him as the robber with the hammer.

Mr. Spera was subsequently indicted on one count of felony larceny of a motor vehicle and two counts each of second-degree kidnapping, robbery with a dangerous weapon, and conspiracy to commit robbery with a dangerous weapon. Trial commenced on 7 March 2022, and Mr. Perry testified to his recollection of the robbery. During his testimony, Mr. Perry repeatedly identified Mr. Spera as the robber with the hammer; however, after it was revealed that Mr. Perry had initially identified Mr. Spera through a photograph that had not been previously disclosed to the defense, Mr. Spera objected to any identification by Mr. Perry and moved for a mistrial. Following *voir dire* and argument—which included assertions by the State that Ms. Tarleton would also be testifying and providing an identification of Mr. Spera—the trial court sustained Mr. Spera's objection, struck Mr. Perry's identification of Mr. Spera, and denied the motion for mistrial. Consistent with the State's argument, Ms. Tarleton did testify and identify Mr. Spera as one of the robbers while also acknowledging that she knew him socially and had previously engaged in sexual relations with him.

At the close of the State's evidence, Mr. Spera moved to dismiss the charges against him. The trial court dismissed the robbery and kidnapping charges that related to Mr. Phifer, as well as both conspiracy charges. It also reduced the felony larceny of a motor vehicle charge to a misdemeanor, as the State had not put in any evidence as to the truck's value. The trial court denied Mr. Spera's motion to dismiss the remaining charges involving Mr. Perry.

After the charge conference, the trial court instructed the jury on the remaining counts. For misdemeanor larceny of a motor vehicle, the trial court instructed the jury that a conviction required the jury to find "that at the time the Defendant intended to deprive the victim of its use permanently." After deliberation, the jury found Mr. Spera guilty of robbery with a dangerous weapon and misdemeanor larceny of a motor vehicle, acquitting Mr. Spera of second-degree kidnapping. The trial court sentenced Mr. Spera to 84 to 113 months' imprisonment for robbery with a dangerous weapon, followed by a consecutive sentence of 120 days for misdemeanor larceny. Mr. Spera gave oral notice of appeal at sentencing.

## II. ANALYSIS

Mr. Spera's three principal arguments identify error in: (1) the denial of his motion for mistrial; (2) the denial of his motion to dismiss the misdemeanor larceny charge for insufficient evidence of the requisite intent; and (3) the trial court's failure to *sua sponte* instruct the jury regarding temporary deprivation. We disagree with Mr. Spera as to his first argument; however, because we hold the evidence was insufficient to show the requisite intent for misdemeanor larceny, we vacate that conviction and remand for entry of judgment on the lesser-included offense of unauthorized use of a motor vehicle. Finally, because our second holding is dispositive as to the larceny conviction, we decline to address Mr. Spera's third argument.

### A. Mistrial

*1. Standard of Review*

A trial court's denial of a motion for mistrial is reviewed for abuse of discretion. *State v. Bradley*, 279 N.C. App. 389, 406, 864 S.E.2d 850, 864 (2021). This is a highly deferential standard, as the trial court's "ruling thereon (without findings of fact) is not reviewable without a showing of gross abuse of discretion." *State v. Daye*, 281 N.C. 592, 596, 189 S.E.2d 481, 483 (1972).

*2. Analysis*

A mistrial is proper "when there are improprieties in the trial so serious that they substantially and irreparably prejudice the defendant's case and make it impossible for the defendant to receive a fair and impartial verdict." *State v. Bonney*, 329 N.C. 61, 73, 405 S.E.2d 145, 152 (1991) (citation and quotation marks omitted). A motion for mistrial necessitates demonstration of harm "beyond a reasonable doubt." *State v. Nolen*, 144 N.C. App. 172, 178, 550 S.E.2d 783, 787 (2001) (citation omitted). In many instances, a curative instruction issued promptly by the trial court can effectively neutralize such prejudice. *State v. McDougald*, 279 N.C. App. 25, 30, 862 S.E.2d 877, 881 (2021). Additionally, any prejudicial impact can be negated by the admission of cumulative evidence establishing the same fact. *Nolen*, 144 N.C. App. at 179, 550 S.E.2d at 787-88.

Here, Mr. Perry emphatically identified Mr. Spera as one of the armed men that robbed him, and repeatedly referred to Mr. Spera throughout his testimony. Partway through that incriminating testimony, Mr. Spera's counsel learned that Mr.

Perry had given an out-of-court identification to the prosecution, leading counsel to lodge an immediate objection "based on a highly improper photo" identification and lack of disclosure to the defense. The trial court—after hearing *voir dire* testimony, arguments from the parties, and the forecast from the State of Ms. Tarleton's anticipated identification testimony—sustained the objection and provided the following curative instruction:

> For the record the motion to suppress the identification of the Defendant is granted. I am instructing, ladies and gentlemen of the jury, that you are to disregard totally and to give no weight to the last witness's identification of the Defendant, that being Mr. Perry. Is that understood? You are to strike that entirely. Next witness.

Immediately following this instruction, Mr. Spera's counsel cross-examined Mr. Perry on the substantial discrepancies between Mr. Spera as he appeared in court and Mr. Perry's testimonial description of the perpetrator.

Mr. Spera acknowledges that curative instructions are usually sufficient to preclude a mistrial, but asserts this case is different based on the specific instruction given and the evidence presented, noting that the sufficiency of a curative instruction is a fact-intensive inquiry dependent on the circumstances of each individual trial. *State v. Aldridge*, 254 N.C. 297, 300, 118 S.E.2d 766, 768 (1961). He argues—and we agree—that the trial court's curative instruction here was likely too vague, standing alone, to adequately dispel the prejudice of Mr. Perry's repeated and emphatic identifications of Mr. Spera. Where we part from Mr. Spera's logic, however, is in the

import of Ms. Tarleton's testimony, and we ultimately hold that her cumulative testimony, coupled with the curative instruction, albeit inadequate standing alone, and his counsel's able cross-examination of Mr. Perry, defeats Mr. Spera's claim of a gross abuse of discretion by the trial judge in denying his mistrial motion.

In opposing Mr. Spera's mistrial motion, the State explicitly directed the trial court to Ms. Tarleton's anticipated testimony identifying Mr. Spera as one of the perpetrators of the alleged larceny. After she took the stand, Ms. Tarleton affirmatively identified Mr. Spera as such, and testified that "Spera stepped in and started demanding [the victims'] stuff. . . . He just started demanding their stuff, all they had. The weed, they had phones, everything. Whatever goods they may have had on them." She subsequently confirmed that Mr. Spera left the mobile home with the other robber, Mr. Weathers, and only recalled seeing Mr. Spera again after Mr. Perry's truck returned to the mobile home. As for her familiarity with the alleged perpetrators, she testified that she knew both Mr. Spera and Mr. Weathers intimately, which lent credence to her identification. And, though Mr. Spera's counsel elicited testimony from Ms. Tarleton that she was testifying pursuant to a plea arrangement, any evaluation as to her credibility—consistent with the standard credibility and interested witness instructions given by the trial court—was within the exclusive province of the jury. *State v. Hoff*, 224 N.C. App. 155, 160, 736 S.E.2d 204, 208 (2012). We cannot say that the trial court's decision to leave that credibility determination to the jury, made in light of those proper instructions, amounts to a

manifest abuse of discretion.

Beyond Ms. Tarleton's cumulative testimony, any prejudice resulting from Mr. Perry's improper identification was further ameliorated by defense counsel's cross-examination. Immediately following the curative instruction, Mr. Spera's counsel elicited in testimony Mr. Perry's initial identification of the second robber, first described as a five-foot-tall bald Black man with a goatee—a description that clearly did not match Mr. Spera's appearance in the courtroom. Such evident discrepancies were probative to impeach any improper identification by Mr. Perry. *See, e.g., State v. Joyner*, 33 N.C. App. 361, 365, 235 S.E.2d 107, 110 (1977) (holding trial counsel's cross-examination and impeachment of a witness concerning allegedly improper testimony negated any prejudice from said testimony). In sum, trial counsel's cross-examination, Ms. Tarleton's cumulative testimony identifying Mr. Spera as the perpetrator of the alleged crime, and the trial court's curative instruction—however insufficient on its own—preclude us from holding that there was "substantial and irreparable prejudice to the defendant's case," N.C. Gen. Stat. § 15A-1061 (2021), such that the trial court's denial was "a gross abuse of . . . discretion," *State v. Bidgood*, 144 N.C. App. 267, 273, 550 S.E.2d 198, 202 (2001) (citation omitted).

Mr. Spera urges us to reach a different result based on *Aldridge*, where the Supreme Court reversed a trial court's denial of a mistrial for improperly admitted evidence notwithstanding a curative instruction and cumulative testimony from additional witnesses. 254 N.C. at 301, 118 S.E.2d at 768. The facts of *Aldridge*, a

half-century old criminal child support case, render it inapposite to the case at bench. There, a married woman was seeking child support from a man who was not her husband, alleging he fathered her child. In an attempt to prove that the defendant was the child's father, the woman impermissibly (under the common law in effect at the time) testified before the jury that her husband could not have sired the child because she had not seen him for two years. *Id.* at 298, 118 S.E.2d at 767. Though a curative instruction was given and other witnesses gave "much less probative" testimony suggesting the woman's nonaccess to her husband, the Supreme Court ultimately held that the improper testimony was so prejudicial that a mistrial should have been declared. *Id.* at 299, 118 S.E.2d at 767.

But the prejudice identified in *Aldridge* stemmed from antiquated evidentiary concepts found in the common law of child support cases involving "illegitimate" children. Under the common law of that era, "[t]he wife [wa]s not a competent witness to prove the nonaccess of the husband . . . . Her testimony and declarations [were] excluded not only as violative of the confidential relations existing between husband and wife but pursuant to a sound public policy which prohibits the parent from bastardizing her own issue." *Ray v. Ray*, 219 N.C. 217, 219, 13 S.E.2d 224, 226 (1941). Thus, whether a wife had "access" to her husband was presumed to be private information within the marital relationship. *Id.* And, lacking DNA evidence, the testimony of the wife was presumed to be the most probative evidence of her sexual activities. *Cf. id.* ("[S]he is permitted to testify as to the illicit relations in actions

directly involving the parentage of the child, for in such cases, proof thereof frequently would be an impossibility except through the testimony of the woman." (citations omitted)).

We decline to analogize the prejudice stemming from caselaw: (1) grounded in the patent sexism of the past; and (2) predating the modern rules of evidence on paternity and DNA testing. *See* N.C. Gen. Stat. § 8-57.2 (2021) (abrogating the common law rule discussed in *Aldridge* and explicitly authorizing the mother in any action involving paternity of a child born during a marriage to testify to nonaccess); N.C. Gen. Stat. § 8-50.1(a) (2021) (requiring the trial court to order blood testing to determine parentage, "regardless of any presumptions with respect to parentage," upon motion of the State or defendant). Moreover, Mr. Spera's identity is not so intimate a fact as whether a spouse had "nonaccess" to their partner such that Mr. Perry's identification was inherently more probative than one from another witness; Ms. Tarleton was in the room at the time of the robbery, knew both Mr. Spera and Mr. Weathers well, and could thus provide an identification of equal—if not altogether greater—probative value.[1]

The case before us is also different for several additional reasons, namely: (1) Mr. Spera's counsel ably cross-examined Mr. Perry on the differences between his

---

[1] Indeed, given that Ms. Tarleton's description of Mr. Spera's appearance at the time of the robbery lacked the glaring inconsistencies between Mr. Spera's actual appearance and Mr. Perry's initial description of the man with the hammer, Ms. Tarleton's identification could reasonably be afforded greater weight than Mr. Perry's.

initial identification and Mr. Spera's in-court appearance, substantially undercutting the improper identification's probative value;[2] (2) Ms. Tarleton's identification of Mr. Spera was highly probative given her intimate familiarity with both Mr. Spera and Mr. Weathers; and (3) Mr. Spera's identity—unlike the details of the wife's sexual activities in *Aldridge*—was not intimate and private knowledge such that Mr. Perry was the best and most credible source for that information. Thus, *Aldridge's* context and ruling do not align sufficiently with our case, and we find it inapposite to the appeal before us.

## B. Motion to Dismiss

Mr. Spera next challenges the trial court's denial of his motion to dismiss the larceny charge, arguing that the evidence presented does not sufficiently demonstrate his intention to permanently deprive Mr. Perry of his vehicle. He highlights that the evidence, at best, implies only an intended temporary deprivation. We agree with Mr. Spera, vacate his misdemeanor larceny conviction on this basis, and remand for entry of a judgment convicting him of the lesser-included offense of unauthorized use of a motor vehicle.

### 1. *Standard of Review*

---

[2] Of note, the Supreme Court stated in *Aldridge* that the defendant's counsel "undertook, *with indifferent success*, to impeach [the woman's] testimony as to nonaccess." 254 N.C. at 299, 118 S.E.2d at 767-68 (emphasis added).

A trial court's ruling on a motion to dismiss is subject to *de novo* review. *State v. Summey*, 228 N.C. App. 730, 733, 746 S.E.2d 403, 406 (2013). When considering the denial of a motion to dismiss, we assess "whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense." *State v. Fritsch*, 351 N.C. 373, 378, 526 S.E.2d 451, 455 (2000) (citation omitted).

Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Vause*, 328 N.C. 231, 236, 400 S.E.2d 57, 61 (1991) (citation and quotation marks omitted). In other words, the State must present "more than a mere scintilla" of evidence to establish each and every element of the charge. *State v. Smith*, 40 N.C. App. 72, 77-78, 252 S.E.2d 535, 539 (1979) (citations and quotation marks omitted). We grant "the State the benefit of every reasonable inference and resolv[e] any contradictions in its favor." *State v. Rose*, 339 N.C. 172, 192, 451 S.E.2d 211, 223 (1994) (citation omitted). The presented evidence and inferences must go beyond "rais[ing] suspicion or conjecture." *State v. Chekanow*, 370 N.C. 488, 492, 809 S.E.2d 546, 550 (2018) (citation omitted).

*2. Analysis*

Larceny is a common law crime with the essential elements "that the defendant: (1) took the property of another; (2) carried it away; (3) without the owner's consent; and (4) with the intent to deprive the owner of his property permanently." *State v. Sisk*, 285 N.C. App. 637, 641, 878 S.E.2d 183, 186 (2022) (citations and

quotation marks omitted). "The statutory provision upgrading misdemeanor larceny to felony larceny does not change the nature of the crime; the elements of proof remain the same." *State v. Smith*, 66 N.C. App. 570, 576, 312 S.E.2d 222, 226 (1984).

The final element—intent—is often inferred from circumstantial evidence rather than direct proof. *State v. Harlow*, 16 N.C. App. 312, 315, 191 S.E.2d 900, 902 (1972). However, our Supreme Court recognized long ago that "[s]omething more than the mere act of taking is necessary to be shown before the jury can proceed to inquire into the [defendant's] intent." *State v. Foy*, 131 N.C. 804, 805, 42 S.E. 934, 935 (1902). This "felonious intent" is multifaceted and includes more than just an intent of permanent deprivation:

> Felonious intent as applied to the crime of larceny is the intent which exists where a person knowingly takes and carries away the personal property of another without any claim or pretense of right with the intent wholly and permanently to deprive the owner of his property.

*State v. Perry*, 21 N.C. App. 478, 481-82, 204 S.E.2d 889, 891 (1974) (citation and quotation marks omitted). Thus, a defendant who takes another's property on an honestly mistaken belief that it belongs to them has not committed larceny. *See, e.g., State v. Gaither*, 72 N.C. 458, 460 (1875) (holding, on appeal from a larceny conviction for taking and eating the alleged victim's chickens, that "it cannot be maintained, that if one takes the property of another and eats it, that he is guilty of larceny. It may be trespass, or mistake, or larceny, according to circumstances; it is not *necessarily* larceny." (emphasis in original)). Similarly, a defendant who knowingly

and dishonestly takes another's property for only a temporary purpose lacks "felonious intent" necessary for larceny and has instead merely committed a trespass. *State v. Rogers*, 255 N.C. App. 413, 415, 805 S.E.2d 172, 174 (2017). Thus, proving felonious intent for larceny requires showing two distinct aspects of intent: (1) an intentionally wrongful taking of another's property, *State v. Bowers*, 273 N.C. 652, 655, 161 S.E.2d 11, 14 (1968); and (2) an intent to permanently deprive the victim of possession, *Rogers*, 255 N.C. App. at 415, 805 S.E.2d at 174.

Different facts may circumstantially demonstrate an intent to accomplish a wrongful taking, "inconsistent with an honest purpose, such as when done clandestinely, or, when charged with, denies, the fact; or secretly, or forcibly; or by artifice." *Foy*, 131 N.C. at 805-06, 42 S.E. at 935 (citations omitted). By contrast, intent to permanently deprive the owner of possession "may, generally speaking, be deemed proved if it appears he kept the goods as his own 'til his apprehension, or that he gave them away, or sold or exchanged or destroyed them." *State v. Smith*, 268 N.C. 167, 173, 150 S.E.2d 194, 200 (1966) (citation and quotation marks omitted). In summary, apart from the act of taking itself, additional facts must be present to support an inference of the requisite criminal intent, including both the intent to wrongfully take *and* the intent to permanently deprive the owner of possession. And while force goes to an intent to wrongfully take, *Foy*, 131 N.C. at 805-06, 42 S.E. at 935, no case cited by the State has held that it also demonstrates an intent to permanently deprive; to the contrary, courts have looked to other factors besides force

to show intent to permanently deprive, even in cases where force was used, *Smith*, 268 N.C. at 172-73, 150 S.E.2d at 200 (holding intent to permanently deprive the owner of a rifle taken in an armed robbery was shown by the abandonment of the rifle after the taking rather than the death threats, use of a firearm, and firing of a warning shot at the victim's feet in the robbery itself).

Consistent with *Smith*, intent to permanently deprive the victim of possession has been shown in a number of factual circumstances, though the use of force does not appear to be among them. In *State v. Osborne*, a larceny case involving the theft of numerous personal articles from the victim's apartment, we held that the discovery of the items "in the defendant's bags and among his own possessions [was] sufficient evidence from which a reasonable jury could conclude defendant had the necessary intent to permanently deprive [the victim] of [his] property." 149 N.C. App. 235, 243, 562 S.E.2d 528, 534 (2002). That is, the stolen materials were kept until discovered, not voluntarily returned after a short period. Similarly, apprehension of missing money, in the defendants' possession and alongside other unrelated stolen items, was sufficient to show the requisite criminal intent to permanently deprive the rightful owner of possession in *State v. Jones,* 57 N.C. App. 460, 464, 291 S.E.2d 869, 872 (1982). In *State v. Hager,* we held that a jewelry thief's intent to permanently deprive the owner of possession was shown from the "defendant's exchanging the [stolen] items for cash" at several pawnshops. 203 N.C. App. 704, 708, 692 S.E.2d 404, 407 (2010). We likewise held that intent to permanently deprive was shown in an

automobile theft in *State v. Jackson*; because the stolen car in that case was never recovered, "[t]he fact that the car ha[d] not yet been returned or even located by the police [was] sufficient to raise an inference in favor of the State that the defendant did in fact intend to keep the car permanently when he took it." 75 N.C. App. 294, 297-98, 330 S.E.2d 668, 670 (1985). Finally, abandonment of a car was similarly deemed sufficient evidence of intent of permanent deprivation in *State v. Allen*, where the "[d]efendant's abandonment of the vehicle . . . placed the vehicle beyond his power to return it to [the victim] and showed his indifference as to whether [the victim] ever recovered it." 193 N.C. App. 375, 381, 667 S.E.2d 295, 299 (2008).

These illustrative cases demonstrate that some additional facts beyond the taking itself must exist to prove an intent to permanently deprive the owner of possession. *Foy*, 131 N.C. at 805, 42 S.E. at 935; *Smith*, 268 N.C. at 173, 150 S.E.2d at 200. And, importantly, those decisions did not rely on force to show that particular form of intent; indeed, courts looked to other factors even in cases where force was present. *See Smith*, 268 N.C. at 172-73, 150 S.E.2d at 200; *see also Jones*, 57 N.C. App. at 464, 291 S.E.2d at 872 (discovery of missing money stolen in an armed bank robbery alongside other unrelated stolen goods served to establish intent to permanently deprive, rather than use of weapons in robbery); *State v. Mann*, 355 N.C. 294, 304, 560 S.E.2d 776, 783 (2002) (abandonment of vehicle, rather than use of a weapon in the armed robbery, showed intent to permanently deprive owner of possession).

In contrast to the above cases, other precedents demonstrate that where the uncontroverted evidence contradicts the intent of permanent deprivation, dismissal of the larceny charge is proper. We applied this principle in *Matter of Raynor* to reverse the denial of a motion to dismiss a larceny charge, as all the evidence showed the juvenile defendant picked up a watch with the intention to play with it before voluntarily returning it when asked by its owner. 64 N.C. App. 376, 378-79, 307 S.E.2d 219, 221 (1983). *State v. Watts*, 25 N.C. App. 194, 212 S.E.2d 557 (1975), is even more compelling. There, after being threatened with a hammer and scissors, the victim gave the defendant his wallet and some credit cards. *Id.* at 195, 212 S.E.2d at 557. When the defendant demanded more money, the victim replied that he would be receiving his $150 paycheck later that morning. *Id.* The defendant responded by "agree[ing] that he would take the money but forced [the victim] to get his television set and place it and other items in a paper bag, which defendant would hold as security until [the victim] could get the money." *Id.* at 195, 212 S.E.2d at 557-58. We held that these facts were insufficient to show larceny of the television set, as "[a]ll of the evidence tends to show that [the defendant] took the set for the purpose of coercing the owner to pay him $150," rather than with an intent to permanently deprive the victim of the TV. *Id.* at 198, 212 S.E.2d at 559. Thus, in *Watts*, the use of force and the taking of other items were insufficient to show intent to permanently deprive the owner of possession of the TV when all the other uncontradicted evidence established the taking was for a temporary purpose only. *Id.*

We have not identified—and the State has not provided—any precedent upholding a denial of a motion to dismiss a larceny charge where: (1) the only alleged evidence of intent of permanent deprivation was the taking itself; and (2) all additional evidence disclosed an intent to accomplish only a temporary deprivation.[3] Indeed, such precedent would be at odds with both our longstanding common law, *Foy*, 131 N.C. at 805-06, 42 S.E. at 935, and the logical notion that the lone act of taking does not indicate, one way or the other, whether the deprivation is intended to be permanent or temporary. The State's claim that Mr. Spera "took Mr. Perry's keys, without his consent, and permanently deprived Mr. Perry of his truck for some period of time," is internally inconsistent because "some period of time" essentially and logically concedes non-permanence. To hold that inferences drawn from the taking alone, with no other evidence related to the permanence of the taking, would permit the State to send larceny cases to the jury where only a lesser crime had been proven, eliminating the State's burden of proving the elements of the greater larceny

---

[3] The State relies primarily on *State v. Walker*, where a jewelry thief was caught putting rings into his pocket on the salesroom floor. 6 N.C. App. 740, 742, 171 S.E.2d 91, 92 (1969). When the thief was confronted by an owner of the store, the thief dropped the rings, offered to be searched and, when told the police would be searching him, fled the premises before he was apprehended a few blocks away. *Id.* The central issue in *Walker* was not intent, but "the question of asportation," *id.* at 743, 171 S.E.2d at 93, which is an entirely different element than intent. *See State v. Carswell*, 296 N.C. 101, 103, 249 S.E.2d 427, 428 (1978) (discussing "asportation, or carrying away" as an element of larceny (citation and quotation marks omitted)). Regardless, the defendant in *Walker* was initially apprehended and confronted by the store owner with the stolen goods in his possession, 6 N.C. App. at 742, 171 S.E.2d at 92, which is a well-recognized means of circumstantially demonstrating an intended permanent deprivation. *Smith,* 268 N.C. at 173, 150 S.E.2d at 200. Finally, unlike a truck—which is useful for innumerable purposes, both temporary and permanent—it is difficult to conceive of a reason for temporarily and illicitly taking a handful of rings and shoving them in one's pocket.

offense. *See, e.g., State v. Ross*, 46 N.C. App. 338, 339, 264 S.E.2d 742, 743 (1980) (recognizing unauthorized use of a motor vehicle as a lesser-included offense of larceny that does not require showing intent of permanent deprivation).

Nor do threats of violence and the taking of some other objects of lesser value—not alleged in the larceny indictment—amount to sufficient evidence to support such an inference when the remaining uncontroverted facts show an intent to only accomplish a temporary deprivation. *See Watts*, 25 N.C. App. at 198, 212 S.E.2d at 559; *Smith*, 268 N.C. at 172-73, 150 S.E.2d at 200. Again, consistent with logic and the absence of any caselaw to the contrary from the State, the use of force to accomplish a theft reveals an intent to wrongfully take an item, but it says nothing about the intended duration of the taking. *Compare Foy*, 131 N.C. at 805-06, 42 S.E. at 935 (noting use of force as circumstantial evidence showing an intent to wrongfully take possession of another's property), *with Smith*, 268 N.C. at 173, 150 S.E.2d at 200 (enumerating, without mention of force, facts that are generally considered sufficient to circumstantially show intent of permanent deprivation).

Turning to the specific evidence introduced in this case, there was insufficient evidence of an intent of permanent deprivation to send the misdemeanor larceny charge to the jury. Mr. Perry testified that Mr. Spera took the car on a "joy rid[e]," and Ms. Tarleton testified, without objection, that she "underst[ood] . . . [Mr. Perry and Mr. Taylor] were waiting until Luther [Weathers] came back with the truck so they could leave." And both witnesses testified that Mr. Spera returned the vehicle

voluntarily, handed back the keys to Mr. Perry, and released him without harm. Mr. Perry also testified that Mr. Spera began the robbery by demanding "powder" and "must have assumed we were selling cocaine or something," suggesting Mr. Spera initially intended to steal drugs rather than permanently steal a truck. All of this uncontroverted evidence supports only an inference of a temporary deprivation. *See Raynor*, 64 N.C. App. at 379, 307 S.E.2d at 221 (holding there was "*no* evidence whatsoever" of intent of permanent deprivation notwithstanding evidence that the item was initially recovered in the defendant's possession, as the defendant's testimony disclaimed such intent and uncontradicted evidence showed the item was voluntarily returned at the request of the purported victim (emphasis in original)).

No other facts support a contrary inference under the caselaw cited to this Court and reviewed above. While it is true that Mr. Spera threatened force and took the phone and keys from Mr. Perry, those facts do not overcome other uncontradicted evidence establishing a temporary deprivation only. *Watts*, 25 N.C. App. at 195, 212 S.E.2d 557-58; *Smith*, 268 N.C. at 172-73, 150 S.E.2d at 200; *cf. Raynor*, 64 N.C. App. at 379, 307 S.E.2d at 221. Any inference of a permanent deprivation from these facts amounts to mere conjecture and speculation insufficient to survive a motion to dismiss.

Having held that the trial court erred in denying Mr. Spera's motion to dismiss the larceny charge, we turn to the appropriate remedy. Mr. Spera argues that pure vacatur without remand is required, asserting that he was charged by indictment

with larceny of property in excess of $1,000 and that unauthorized use of a motor vehicle is only a lesser-included offense of "larceny of a motor vehicle."[4]  But our precedents establish that "[a]ll of the essential elements of the crime of unauthorized use of a conveyance, N.C.G.S. 14-72.2(a), *are included in larceny*, N.C.G.S. 14-72, and we hold that it may be a *lesser included offense of larceny* where there is evidence to support the charge." *Ross*, 46 N.C. App. at 339, 264 S.E.2d at 743 (emphasis added) (citation omitted); *see also State v. Hole*, 240 N.C. App. 537, 540, 770 S.E.2d 760, 763 (2015) (recognizing unauthorized use of a motor vehicle as a lesser-included offense of larceny but not possession of stolen goods).  "Larceny of a motor vehicle" is not a separate or distinct offense from "larceny" under either our common law or statutes. *See, e.g., State v. Allen*, 193 N.C. App. 375, 380, 667 S.E.2d 295, 299 (2008) (applying the common law elements of larceny and the related offense classification statute for larceny generally, N.C. Gen. Stat § 14-72, to a conviction for "felonious larceny of a motor vehicle").

Nothing in *Ross* or related precedents limits unauthorized use of a motor vehicle as a lesser-included offense to indictments for "larceny of a motor vehicle" alone.  Consistent with this caselaw, we vacate Mr. Spera's conviction for misdemeanor larceny and remand for entry of a judgment on the lesser-included

---

[4] We note that the indictment in this case did specifically assert "larceny of a motor vehicle," alleging Mr. Spera "did steal, take and carry away a motor vehicle, to wit, a 1984 Chevrolet truck . . . having a value of more than $1,000.00."

offense of unauthorized use of a motor vehicle. *See State v. Jolly*, 297 N.C. 121, 130, 254 S.E.2d 1, 7 (1979) (holding that the proper remedy for an improperly denied motion to dismiss where the only unproved element was the element elevating the offense to the greater crime is vacatur of the judgment and remand for entry of judgment on the lesser-included offense, as "in finding defendant guilty of [the greater crime], the jury necessarily had to find facts establishing the [lesser] offense").

## III.    CONCLUSION

For the foregoing reasons, we vacate Mr. Spera's conviction for misdemeanor larceny in 17CRS052233 and remand for entry of a judgment on the lesser-included offense of unauthorized use of a motor vehicle. Beyond that, we find no error in his remaining convictions.

VACATED IN PART AND REMANDED.

Judges HAMPSON and FLOOD concur.